STATE of Minnesota, Respondent,

v.

Eleanore Ann SHERWOOD, Appellant.

No. C6–83–1586.

Court of Appeals of Minnesota.

Aug. 14, 1984.

Hubert H. Humphrey, III, State Atty. Gen., St. Paul, Thomas L. Johnson, Hennepin County Atty., Paul R. Jennings, Asst. County Atty., Minneapolis, for respondent.

Barry V. Voss, Minneapolis, for appellant.

Heard, considered and decided by PARKER, P.J., and FOLEY and HUSPENI, JJ., with oral argument waived.

## OPINION

HUSPENI, Judge.

Defendant appeals her conviction for receiving and concealing stolen goods. She challenges the admission of evidence obtained during execution of a warrant to search her home. We affirm.

## FACTS

The affidavit in support of the warrant to search defendant's home stated that, as part of a shoplifting investigation, police placed defendant's home under surveillance. Police followed defendant and an-

other woman when they visited Byerly's, the Ediner, and Southdale shopping center. The women entered the stores carrying coats and large handbags. The affidavit specifies that they returned from Byerly's and the Ediner without any packages.

The police saw the women transfer items of food to the back seat of their car after leaving Byerly's. While the women were in Southdale, the police looked in the back window of the car and saw food and many items of children's clothing. When the women returned to defendant's home, the police saw them carry packages into the house.

Police impounded the car later that night and the next day obtained a warrant to search it. They recovered food, new clothing with price tags attached, and some loose clothing stickers. Three days after the police impounded the car, they obtained a warrant to search defendant's home for items matching the loose stickers.

The police neglected to mention in either warrant application that, after the women dropped off packages from their trip to Southdale, they visited Rosedale shopping center and Har Mar Mall. The women apparently discovered they were being followed and took off at a high speed. They got away when the police stopped to collect plastic bags which the women tossed from their car. The bags contained dresses later identified as coming from Rosedale stores.

When the police searched defendant's home pursuant to the warrant, they took personnel from the Rosedale stores with them. The police conducted a methodical, room-by-room search. The store personnel advised them which items might be stolen.

The police seized over 200 items of clothing, a rug, a sleeping bag, blankets and other linen, a set of silverware, a case of 9-volt batteries, a box of fireworks, and assorted bills and receipts. Some of the clothing seized was on store hangers and there were duplicates of some items. The police found a brown handbag listed on the warrant, but did not find two other items of clothing listed in the warrant.

At trial, the court upheld the validity of the search warrant and items seized from defendant's home were admitted into evidence.

Defendant was convicted of receiving and concealing stolen property worth more than $1,000.

## ISSUE

Did admission of evidence obtained during the execution of a warrant to search defendant's home violate her Fourth Amendment right to be free from unreasonable searches and seizures?

A. Did the supporting affidavit establish probable cause to believe that defendant had stolen property at her home?

B. Was the seizure of items not listed on the warrant legal under the plain view exception to the warrant requirement?

## ANALYSIS

A. Defendant's argument that the affidavit accompanying the search warrant was insufficient to establish probable cause that she had stolen property in her home is meritless.

In *Illinois v. Gates*, —— U.S. ——, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), the United States Supreme Court adopted a practical, common-sense, totality-of-the-circumstances standard for evaluating probable cause.

The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him * * * there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis for ... conclud[ing]" that probable cause existed.

*Id.* 103 S.Ct. at 2332 (quoting *Jones v. United States*, 362 U.S. 257, 271, 80 S.Ct. 725, 736, 4 L.Ed.2d 697 (1960)).

▇▇ After-the-fact scrutiny by courts of the sufficiency of an affidavit should not take the form of de novo review. Review-

ing courts should pay great deference to a magistrate's determination of probable cause. Marginal cases should be determined by the preference accorded to warrants. *Id.* 103 S.Ct. at 2331.

■ Here, there was sufficient evidence to establish probable cause that stolen property could be found at defendant's home. The magistrate could conclude that defendant possessed stolen property from the police officers' observations of her activities at Byerly's, the Ediner, and the Southdale center, and from the recovery of stolen food and clothing from the impounded car. Since the police watched defendant carry merchandise into her home after her "shopping trip," the magistrate could also conclude that the stolen property was stored at her house.

Defendant contends that even if there was probable cause to believe she had stolen property at her home on the day of her visit to Southdale, there was no reason to believe it was still there three days later when the police applied for a warrant. There is no rule that information becomes stale after a set number of hours or days. *State v. McLane*, 346 N.W.2d 688, 690 (Minn.Ct.App.1984).

> The likelihood that the evidence sought is still in place is a function not simply of watch and calendar but of variables that do not punch a clock: the character of the crime (chance encounter in the night or regenerating conspiracy?), of the criminal (nomadic or entrenched?), of the thing to be seized (perishable and easily transferable or of enduring utility to its holder?), of the place to be searched (mere criminal forum of convenience or secure operational base?), etc.

*State v. Yaritz*, 287 N.W.2d 13, 16 (Minn. 1979) (quoting *Andresen v. State*, 24 Md. App. 128, 172, 331 A.2d 78, 106 (1975), aff'd. sub nom. *Andresen v. Maryland*, 427 U.S. 463, 96 S.Ct. 2727, 49 L.Ed.2d 627 (1976)).

■ Defendant's activities suggested organized shoplifting rather than an isolated theft. The clothing items taken could have been of enduring value to defendant. And the place to be searched was defendant's permanent residence. From this, the magistrate could conclude that the items would probably still be at defendant's home three days later.

■ B. Defendant also contends that the seizure of items not listed on the warrant was unreasonable. We find that the seizure was justified under the plain view doctrine, as enunciated by *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971) and *Texas v. Brown*, 460 U.S. 730, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983).

First, the initial entry into defendant's home was legal because it was pursuant to a valid warrant.

Second, the police's discovery of stolen merchandise was inadvertent. There was no evidence that the police knew in advance of the existence or location of specific items and used the limited search warrant as a pretext to seize them. They restricted their search to areas likely to conceal items covered by the warrant and did not continue to search after those items were found. There was no invasion of privacy beyond that authorized by the warrant.

Finally, police had probable cause to believe that the items they found were connected with criminal activity. They discovered over 200 items of new clothing, including several dresses and handbags worth more than $150 each. There were duplicates of some items still on store hangers. Inasmuch as the officers had not set forth in their search warrant application affidavits their observations of defendant in and about the Rosedale and Har Mar shopping centers, those facts could not be considered in determining the validity of the search warrant. However, those facts were available to the officers at the time they were executing the search warrant in defendant's home and those facts support the officers' conclusion that the merchandise there present was stolen.

## DECISION

The admission of evidence seized during the execution of a warrant to search de-

fendant's home did not violate her constitutional rights. We affirm her conviction.